IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES LUCAS DINGMAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | NO. 21-1946 |
| Commissioner of Social Security[1] | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                                 August 12, 2022

Charles Lucas Dingman ("Plaintiff") seeks review of the Commissioner's decision denying his application for child disability benefits ("CDB"). For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and affirm.

I. **PROCEDURAL HISTORY**

Plaintiff, who was born on August 14, 1996, protectively filed for CDB on March 27, 2018, alleging disability beginning on November 1, 2000, as a result of anxiety, depression, and Asperger's Syndrome. Tr. at 70, 176, 193.[2] Plaintiff later amended his alleged onset date to May 4, 2017. Id. at 41-42, 48. Plaintiff's application was denied initially, id. at 94-97, and he requested a hearing before an ALJ, id. at 99, which took

---

[1]Kilolo Kijakazi is currently the Acting Commissioner of Social Security, see https://www.ssa.gov/agency/commissioner/ (last visited Aug. 12, 2022), and should be substituted for Andrew Saul as the defendant in this action. Fed. R. Civ. P. 25(d). No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]Although Plaintiff indicated in his application that he intended to file for supplemental security income, tr. at 176, no such application appears in the record and the ALJ's decision addresses only the application for CDB. Id. at 18.

place on September 24, 2019, id. at 52-69, and February 20, 2020.  Id. at 37-51.³  On March 23, 2020, the ALJ found that Plaintiff was not disabled.  Id. at 18-28.  The Appeals Council denied Plaintiff's request for review on February 26, 2021, id. at 1-4, making the ALJ's March 23, 2020 decision the final decision of the Commissioner.  20 C.F.R. § 404.981.

Plaintiff commenced this action in federal court on April 28, 2021, Doc. 1, and the matter is now fully briefed and ripe for review.  Docs. 9-11.⁴

## II.  LEGAL STANDARDS

A disabled claimant is entitled to CDB based on an insured's earnings record if he can show he (1) is a child of the insured, (2) is dependent on the insured, (3) applies for benefits, (4) is not married, and (5) is under 18, or is 18 years old or older and had a disability before he became 22 years old.  20 C.F.R. § 404.350(a)(1)-(5); see also 42 U.S.C. § 402(d); Ricci v. Apfel, 159 F. Supp.2d 12, 16 n.3 (E.D. Pa. 2001).⁵  The definition of a disability for a CDB applicant aged 18 or older is the same definition used to determine a disability for purposes of disability insurance benefits ("DIB").  See 42

---

³Plaintiff testified at the first hearing, which the ALJ continued to obtain consultative examinations prior to questioning a vocational expert ("VE").  Tr. at 66.  Prior to the second hearing, the ALJ obtained answers to vocational interrogatories from the VE.  Id. at 284-89.  The VE and Plaintiff's mother testified at the second hearing.  Id. at 41-50.

⁴The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  See Standing Order, In RE:  Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018); Doc. 7.

⁵Plaintiff was 21 years old when his application was filed.  He identified Mark Stephen Dingman, Sr., as the insured worker under whose benefits he alleged entitlement.  Tr. at 190.

U.S.C. § 402(d)(1)(B)(ii) (referring to definition in 42 U.S.C. § 423(d)); see also Ricci, 159 F. Supp.2d at 16 (applying DIB disability standard for claim of CDB).

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months." 42 U.S.C. § 423(d)(1). The Commissioner employs a five-step process, evaluating:

> 1. Whether the claimant is currently engaged in substantial gainful activity;
>
> 2. If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities;
>
> 3. If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
> 4. If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his past work; and
>
> 5. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R. § 404.1520(a)(4). Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of his age,

3

education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).  As noted, for purposes of CDB, the claimant must establish that he or she was disabled prior to age 22.  20 C.F.R. § 404.350(a)(5).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff was not disabled prior to attaining age 22.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla."  Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court has plenary review of legal issues.  Schaudeck, 181 F.3d at 431.

### III.  DISCUSSION

#### A.  ALJ's Findings and Plaintiff's Claims

The ALJ found that prior to age 22, Plaintiff suffered from the severe impairments of major depressive disorder ("MDD") and autism spectrum disorder ("ASD"), and did not have an impairment or combination of impairments that met the Listings prior to turning 22.  Tr. at 21.  The ALJ determined that, prior to age 22, Plaintiff retained the RFC to perform a full range of work at all exertional levels, with the following

4

nonexertional limitations: simple, routine tasks; simple work-related decisions; and occasional contact with the public, supervisors, and co-workers. Id. at 23. Plaintiff had no past relevant work but, based on the testimony of the VE, the ALJ found that Plaintiff could perform jobs in the national economy including laundry laborer, hand packer, and cleaner/housekeeping. Id. at 49, 285-86. Thus, the ALJ found that Plaintiff was not disabled prior to August 13, 2018, the day he turned 22. Id. at 28.

Plaintiff claims that the ALJ failed to include all of the limitations imposed by Plaintiff's treating psychiatrist in the RFC assessment despite finding the doctor's opinion "generally persuasive." Doc. 9 at 9 (quoting tr. at 26). Plaintiff also claims that the ALJ's decision is constitutionally defective based on the improper appointment of the Commissioner of Social Security. Doc. 9 at 4-6.[6] Defendant responds that the ALJ properly considered the opinion of Plaintiff's treating psychiatrist and accounted for Plaintiff's credibly established limitations in the RFC assessment. Doc. 10 at 19-24. Although Defendant agrees that the statutory provision governing the appointment of the Commissioner violates the separation of powers to the extent it limits the President's authority to remove the Commissioner without cause, she argues that such violation does not provide a basis to remand the case. Doc. 10 at 4-17.

**B.     Summary of the Record**

Plaintiff was born on August 14, 1996, making him 20 years old at the time of his alleged disability onset (May 4, 2017), and 23 at the time of the ALJ's decision (March

---

[6]I have combined Plaintiff's two merits arguments into a single issue, and have reversed the order of Plaintiff's claims for ease of discussion.

23, 2020). Tr. at 176. He completed high school and was attending college, taking a few courses each semester, at the time of the first administrative hearing. Id. at 56-57. He has no past relevant work. Id. at 193.

Plaintiff has a history of depression and anxiety. Tr. at 413, 500, 501, 579.[7] On March 6, 2017, Denice Barnes, M.D., at We Care Pediatrics, saw Plaintiff for continuing complaints of joint pain. Id. at 412. The doctor diagnosed Plaintiff with panic disorder and concluded that his joint pain was more likely related to depression than connective tissue issues. Id. at 413. Dr. Barnes provided Plaintiff with a list of therapists/counselors and discussed the importance of becoming more active. Id. at 414.

Plaintiff began treatment with Edward L. Schacht, M.D., on May 4, 2017, with complaints of anxiety and depression and concern that he suffered from ASD. Tr. at 504. Dr. Schacht diagnosed Plaintiff with social anxiety disorder. Id. at 525. Dr. Schacht prescribed sertraline on May 18, 2017, and increased the dosage at the next visit on June 1, 2017 Id. at 518, 524.[8] On July 29, 2017, Dr. Schacht noted that on the medication Plaintiff "wakes up feeling much better," and his mental status exam ("MSE") was normal but for an anxious mood. Id. at 526. Plaintiff continued treating with Dr.Schacht through August 2018, remining on sertraline at differing levels throughout his treatment. See id. at 532-33 (8/31/17), 534 (10/17/17), 535 (11/30/17), 540 (2/5/18), 542

---

[7]Plaintiff's substantive claim focuses on his mental health impairments, therefore I limit my review to the mental health treatment notes in the administrative record. Plaintiff was generally accompanied by his mother at his appointments.

[8]Sertraline (brand name Zoloft) is an antidepressant. See https://www.drugs.com/sertraline.html (last visited Aug. 3, 2022).

(medication log 12/14/17-6/11/18), 544 (5/7/18), 546 (7/26/18), 568 (8/4/18). At the August 2018 visit, Dr. Schacht noted that Plaintiff continued to have an anxious mood and that his judgment was variable. Id. at 568.

On July 26, 2018, at the initial consideration stage, Edward Jonas, Ph.D., concluded from his review of the record that Plaintiff suffered from anxiety and obsessive-compulsive disorders, resulting in mild limitations in his ability to understand, remember or apply information; and moderate limitations in his abilities to interact with others, adapt or manage oneself, and concentrate, persist, or maintain pace. Id. at 74-79.

Plaintiff also sought treatment from Biju Basil, M.D., who diagnosed Plaintiff with MDD and a rule out diagnosis of ASD on October 2, 2018. Tr. at 559. Plaintiff reported that he did not believe the Zoloft was helping and his mother agreed. Id. at 557. Dr. Basil decreased Plaintiff's Zoloft and started him on Wellbutrin.[9] Id. at 560. On November 30, 2018, Dr. Basil increased the Wellbutrin dosage. Id. at 556. In March 2019, Dr. Basil noted that the increase in Wellbutrin helped and Plaintiff's mood was better. Id. at 570. On June 3, 2019, the doctor noted that Plaintiff was doing more outside and planned to go back to school in the fall. Id. at 572.[10] The diagnoses were

---

[9]Wellbutrin is an antidepressant. See https://www.drugs.com/wellbutrin.html (last visited Aug. 5, 2022).

[10]The Index indicates that Exhibit 12F (tr. at 570-72) are treatment records dated from "06/03/2018 to 03/09/2019," and the dates on the handwritten records are difficult to discern. See tr. at 571, 572. However, Dr. Basil clearly dated the June 3 visit at the bottom of the page as "06/03/19." Id. at 572. Additionally, in his Medical Source Statement, Dr. Basil stated that he began seeing Plaintiff on October 2, 2018. Id. at 575.

MDD and ASD, and the doctor continued Zoloft and Wellbutrin. Id. at 572. On September 3, 2019, the doctor noted that Plaintiff was taking online classes. Id. at 571.[11]

On September 21, 2019, Dr. Basil completed a Medical Source Statement, noting a diagnosis of MDD and a rule out diagnosis of ASD, with symptoms of mood disturbance, anhedonia (pervasive loss of interests), difficulty thinking/concentrating, decreased energy, social withdrawal, and hostility and irritability. Id. at 575. With respect to the abilities to perform unskilled work, the doctor noted that Plaintiff had moderate limitations (indicating "more than a slight limitation in this area, but the individual is still able to function satisfactorily") in thirteen of the sixteen listed categories. Id. at 576. Similarly, the doctor noted that Plaintiff had moderate limitations in all four categories relating to the performance of semiskilled and skilled work, and in all five categories relating to performing particular types of jobs. Id. at 577. Relevant to Plaintiff's claim, Dr. Basil specifically stated that Plaintiff's impairments would cause him to be absent from work more than three times a month. Id. at 576.

Ronald Karpf, Ph.D., conducted a consultative examination on October 21, 2019. Tr. at 595-99. Plaintiff complained of hypersomnia, panic episodes "every couple months," dysphoric moods five times a week, and short-term and long-term memory deficits and concentration difficulties. Id. at 596. On MSE, Plaintiff's affect showed

---

[11]Plaintiff's counsel also provided Dr. Basil's treatment notes from December 2, 2019, March 2, 2020, and May 29, 2020. Tr. at 14, 35, 36. It is unclear whether the first two treatment notes were presented to the ALJ or Appeals Council. The May 29, 2020 treatment note postdates the ALJ's decision and it is unclear whether it was presented to the Appeals Council as none of the three were mentioned by the Appeals Council. Id. at 6. I note that all three of these treatment notes do not relate to the relevant period because they postdate Plaintiff's twenty-second birthday.

agitation and anxiety, his mood was anxious, his attention and concentration were mildly impaired, he had excellent short-term memory, and his insight and judgment were good. Id. at 597-98.  Dr. Karpf diagnosed Plaintiff with MDD, recurrent, moderate, and social anxiety disorder, with a poor prognosis given that he was not in treatment.  Id. at 598.  The doctor also noted that Plaintiff would not be able to manage his own funds due to poor budgeting skills.  Id.

In a Medical Source Statement, Dr. Karpf found that Plaintiff had mild limitations (slight limitation in functioning independently, appropriately, and effectively on a sustained basis) in his ability to understand, remember, and carry out simple instruction and make judgments on simple work-related decisions.  Tr. at 600.  The doctor found that Plaintiff had moderate limitations (fair ability to function independently, appropriately, effectively, and on a sustained basis) in his abilities to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions, and in the abilities to interact appropriately with the public, supervisors, and co-workers, and respond appropriately to usual work situations and to changes in a routine work setting. Id. at 600-01.

### C. Plaintiff's Claims

#### 1. Opinion Evidence and RFC Assessment

Plaintiff complains that the ALJ failed to properly credit Dr. Basil's opinion and erred in determining the RFC assessment because the ALJ found Dr. Basil's opinion persuasive but failed to incorporate all of the doctor's limitations in the RFC, which in turn vitiates the VE's conclusion that there were jobs that Plaintiff could perform.  Doc. 9

9

at 6-12. Defendant responds that the ALJ properly evaluated Dr. Basil's opinion and accounted for Plaintiff's credibly established limitations in the RFC assessment. Doc. 10 at 19-24.

As noted, Plaintiff began treating with Dr. Basil in November 2018, shortly after turning 22 years old. Tr. at 575. In his September 2019 Medical Source Statement, the doctor concluded that Plaintiff had no limitation or mild limitation in his abilities to understand, remember, and carry out short and simple instructions, maintain regular attendance and be punctual, and moderate limitation in his abilities in every other category listed including the abilities to make simple work-related decisions and understand, remember, and carry out detailed instructions. Tr. at 576-77. The ALJ explained that she found the opinion "generally persuasive." Id. at 26.

> I considered the September 2019 opinion of Biju Basil, M.D., who assessed [Plaintiff] had moderate limitations in most areas of functioning, with no-mild limitations understanding, remembering or carrying out simple instructions and making simple work-related decisions and maintaining regular attendance ([id. at 576-77]). This opinion is generally persuasive, as the overall evidence supports [it] and it is consistent with moderate limits that suggest restrictions performing detailed or complex tasks, but not precluding simple, routine tasks; and interacting with others is somewhat restricted as well, despite the fact that various mental exams reveal essentially normal socialization skills, as previously discussed.

Id. at 26.[12]

---

[12] With respect to Plaintiff's ability to make simple work-related decisions, Dr. Basil checked both "None/Mild" and "Moderate," but the check-mark under "None/Mild" appears to be scribbled out. Tr. at 576. The ALJ appears to have construed the ambiguity as an indication of no or mild limitation, whereas I believe the more correct interpretation is that the doctor found a moderate limitation. This discrepancy does not

The new regulations, which apply to Plaintiff's claim because it was filed after March 27, 2017, focus on the persuasiveness of each medical opinion.

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. § 404.1520c(a).[13]  The regulations list the factors to be utilized in considering medical opinions:  supportability, consistency, treatment relationship including the length and purpose of the treatment and frequency of examinations, specialization, and other factors including familiarity with other evidence in the record or an understanding of the disability program.  Id. § 404.1520c(c).  The most important of these factors are supportability and consistency, and the regulations require the ALJ to explain these factors, but do not require discussion of the others.  Id. § 404.1520c(b)(2).  The regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  Id. § 404.1520c(c)(1).  In addition, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion(s) . . . will be."  Id. § 404.1520c(c)(2).

---

impact the outcome of Plaintiff's appeal as the focus of Plaintiff's complaint is Dr. Basil's finding regarding absenteeism.

[13]In contrast, the regulations governing prior applications spoke in terms of the weight to be given each opinion, including controlling weight for the opinions of certain treating sources.  20 C.F.R. § 404.1527.

"The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Stewart v. Sec'y HEW, 714 F.2d 287, 290 (3d Cir. 1983)).  When there is a conflict in the evidence, the ALJ may choose which evidence to credit and which evidence not to credit, so long as she does not "reject evidence for no reason or for the wrong reason." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); see also Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Specifically, Plaintiff takes issue with the ALJ's failure to include the doctor's conclusion that Plaintiff would be absent more than three times per month, which would preclude all work as the VE indicated.  Doc. 9 at 9 (citing tr. at 49-50).  Defendant argues that the ALJ found Dr. Basil's opinion "generally" persuasive – not "entirely" or "very" persuasive – and explained which limitations she found supported by the evidence, and was not required to incorporate every limitation having found Dr. Basil's opinion only generally persuasive.  Doc. 10 at 22.

Here, Plaintiff overlooks the fact that the doctor's opinion is partially internally inconsistent.  Dr. Basil checked a box indicating that Plaintiff would miss more than three days of work a month.  Tr. at 576.  On the same page of the form, the doctor stated that Plaintiff had no/mild limitation in his ability to maintain regular attendance and be punctual within customary, usually strict tolerances.  Id.  The ALJ stated that Dr. Basil's findings of no/mild limitations in areas including maintaining regular attendance were

consistent with the record evidence, thus adopting Dr. Basil's less restrictive opinion as to attendance. Id. at 26.[14]

Moreover, the ALJ is not required to incorporate every limitation contained in a medical opinion that he or she finds persuasive. See Wilkinson v. Comm'r of Soc. Sec., 558 F. App'x 254, 256 (3d Cir. 2014).

> [N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole "significant" weight. On the contrary, the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner.

Id. (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c)); see also Northington v. Berryhill, Civ. No. 17-2922, 2018 WL 2172565, at *6 (E.D. Pa. Feb. 27, 2018) (R&R approved and adopted 2018 WL 2159923 (E.D. Pa. May 10, 2018)) ("there is no requirement that by assigning great weight to the testimony of one individual, the ALJ is necessarily required to adopt every limitation articulated in that individual's

---

[14] In his reply brief, Plaintiff argues that there is no internal inconsistency, focusing on another of Dr. Basil's conclusions on the same page of the form, namely Dr. Basil's finding that Plaintiff had moderate limitation in the ability to complete a normal workday and workweek without interruption from psychologically based symptoms. Doc. 11 at 3. Plaintiff argues that "the issue of how frequently [Plaintiff] would have interruptions (i.e., unscheduled breaks) in his workday is wholly distinct from the issue of how often he would miss days altogether." Id. This argument overlooks the fact that Dr. Basil found that Plaintiff had "None/Mild" limitation in his ability to "[m]aintain regular attendance and be punctual within customary, usually strict tolerances." Id. at 576. In addition, contrary to Plaintiff's argument that this is a post hoc rationale, the ALJ specifically noted Dr. Basil's finding of "no-mild limitations . . . [in] maintaining regular attendance" in her decision. Id. at 26 (citing tr. at 576).

13

testimony"); Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006) ("Surveying the medical evidence to craft an RFC is part of the ALJ's duties.").[15]

To the extent Plaintiff argues that the ALJ failed to acknowledge Dr. Basil's treatment relationship with Plaintiff and the longevity of the treatment, Doc. 9 at 10, I note that the governing regulations do not require the ALJ to address this particular factor. See 20 C.F.R. § 404.1520c(b)(2) (requiring explanation of consideration of consistency and supportability, but not requiring explanation of other factors). Moreover, Plaintiff began treating with Dr. Basil in November of 2018, three months after the relevant period ended for purposes of CDB, when Plaintiff turned 22.

Having determined that the ALJ did not err in crafting the RFC assessment, I find no error in the ALJ's reliance on the VE's testimony in determining that Plaintiff was not disabled. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (for VE's testimony to constitute substantial evidence, VE hypothetical must consider the impairments supported by the record).

    2.    Challenge to the Appointment of the Commissioner of Social Security

Relying on Seila Law LLC v. Consumer Financial Protection Bureau, 140 S.Ct. 2183 (2020), Plaintiff argues that the unconstitutional structure of the Social Security Administration deprived Plaintiff of a valid administrative adjudicatory process. Doc. 9 at 5-6. Although Defendant agrees that the statute governing the appointment of the

---

[15]Wilkinson and Northington predate the change in the regulation from the opinion-weighing paradigm, see 20 C.F.R. § 404.1527(c), to the focus on persuasiveness. See 20 C.F.R. § 404.1520c. The change did not affect the duty of the ALJ to craft the RFC.

Commissioner of Social Security violates the separation of powers, she maintains that this does not support setting aside the decision of the ALJ in this case. Doc. 10 at 4-17.

In Seila Law, the Supreme Court examined the authority of the Director of the Consumer Financial Protection Bureau ("CFPB") in the context of Article II of the Constitution vesting executive power in the President. 140 S. Ct. at 2197. The Court held that "the CFPB's leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers." Id. The Court described the structure of the CFPB as "an independent agency led by a single Director and vested with significant executive power," and concluded that the lack of presidential authority to remove such an officer at will had "no basis in history and no place in our constitutional structure." Id. at 2201.

The Court compared the CFPB to other agencies, including the Social Security Administration, and found important differences.

> After years of litigating the agency's constitutionality, the Courts of Appeals, parties, and *amici* have identified "only a handful of isolated" incidents in which Congress has provided good-cause tenure to principal officers who wield power alone rather than as members of a board or commission. "[T]hese few scattered examples" – four to be exact – shed little light . . . .
> . . . .
> Third, the CFBP's defenders note that the Social Security Administration (SSA) has been run by a single Administrator since 1994. That example, too, is comparatively recent and controversial. President Clinton questioned the constitutionality of the SSA's new single-Director structure upon signing it into law. In addition, unlike the CFPB, the SSA lacks the authority to bring enforcement actions against private parties. Its role is largely limited to adjudicating claims for Social Security benefits.

>             . . . .
>                . . . [T]hese isolated examples are modern and
>       contested. And they do not involve regulatory or
>       enforcement authority remotely comparable to that exercised
>       by the CFPB. The CFPB's single-Director structure is an
>       innovation with no foothold in history or tradition.

Id. at 2202 (internal citations omitted). Thus, in finding a separation of powers violation in the for-cause restriction on removal of the Director of the CFPB, the Court distinguished the SSA from the CFPB.

Moreover, after determining that "the CFPB's leadership by a single independent Director violates the separation of powers," the Court in Seila Law addressed the remedy for the constitutional violation. 140 S. Ct. at 2207-08. At issue was the enforceability of the CFPB's civil investigative demand issued to a law firm. Rather than simply dismissing the agency's enforcement action, the Court determined that "the removal provision can be severed from the other statutory provisions relating to the CFPB's powers and responsibilities," id. at 2209, noting that "[w]e think it clear that Congress would prefer that we use a scalpel rather than a bulldozer in curing the constitutional defect we identify today." Id. at 2210-11. The Court remanded the matter for a determination whether the civil investigative demand was validly ratified. Id. at 2211.

Here, Defendant agrees that the provision limiting the President's authority to remove the Commissioner of Social Security without good cause violates the separation of powers, Doc. 10 at 4-5, but here the parties' agreement ends. Plaintiff contends that because the Commissioner delegates authority to ALJ's to hear and decide cases pursuant to regulations promulgated by an unconstitutionally appointed Commissioner, the

16

administrative decision is constitutionally defective. Doc. 9 at 5-6. Defendant argues that the appointment of the ALJ who decided this case was ratified by an Acting Commissioner, removeable at will, and that Plaintiff has not and cannot show that the removal restriction caused the denial of her claim. Doc. 10 at 5.[16]

My colleague, the late Honorable Marilyn Heffley, addressed Seila Law's applicability in the Social Security appeals context. See Wicker v. Kijakazi, Civ. No. 20-4771, 2022 WL 267896 at *8-10 (E.D. Pa. Jan. 28, 2022). After reviewing several such cases from across the country, Judge Heffley observed that the district courts have relied on another recent Supreme Court case in rejecting the separation of powers argument in Social Security appeals. Id. at *9 (citing Collins v. Yellen, 141 S. Ct. 1761 (2021)). Collins involved the for-cause removal restriction for the single director of the Federal Housing Finance Agency ("FHFA"), which the Supreme Court found violated the separation of powers. The Court instructed that "whenever a separation-of-powers violation occurs, any aggrieved party *with standing* may file a constitutional challenge." 141 S. Ct. at 1780 (emphasis added). To establish standing, "a plaintiff must show that it has suffered 'an injury in fact' that is 'fairly traceable' to the defendant's conduct and

---

[16]It is unclear when the ALJ in this case was appointed, and whether she was appointed by Commissioner Saul, whom Plaintiff claims was an unconstitutionally appointed Commissioner, or by an Acting Commissioner. Defendant states that the ALJ was not appointed by a Commissioner subject to the removal restriction and had her appointment ratified by an Acting Commissioner, but Defendant does not provide any supporting orders or citations to document the ALJ's appointment. Doc. 10 at 5, 7. I need not delve into the ALJ's appointment in this case because Plaintiff's challenge to the ALJ's (and Appeals Council's) authority is based upon the validity of the Commissioner's appointment in light of the unconstitutional removal protection. Doc. 9 at 6; Doc. 11 at 5-6.

17

would likely be 'redressed by a favorable decision.'" Id. at 1779 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." Id. (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).[17]

Judge Heffley next explained the application of Collins to a Social Security benefits review case, relying on a case arising out of the Western District of Washington.

> In Collins, the Directors of the FHFA adopted an amendment . . . to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. The plaintiffs in Collins thus had an identifiable basis to contend that but for the unconstitutional removal provision, the President may have removed and appointed a different Director who would have disapproved of the adoption (or implementation) of the . . . [a]mendment.
> In contrast, there is nothing showing the Commissioner or the SSA implemented new and relevant agency action that may have turned upon the President's inability to remove the Commissioner. Plaintiff has not identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims. Plaintiff thus fails to show how or why [the unlawful] removal clause possibly harmed her.

---

[17]In Seila Law, the Supreme Court "found it sufficient that the challenger sustain[ed] injury from an executive act that allegedly exceeds the official's authority." 140 S.Ct. at 2196. In Collins, the Supreme Court held that the traceability requirement was satisfied because the shareholders suffered a "pocketbook injury" directly traceable to an amendment adopted by the directors of the FHFA that "materially changed the nature of their agreements." 141 S.Ct. at 1779.

18

Wicker, 2022 WL 267896, at *10 (quoting Lisa Y. v. Comm'r of Soc. Sec., No. C21-5207, 2021 WL 5177363, at *7 (W.D. Wash. Nov. 8, 2021) (internal citations omitted)); see also Kowalski v. Kijakazi, Civ. No. 20-1783, 2022 WL 526094, at *10-11 (M.D. Pa. Feb. 22, 2022) (requiring nexus between removal restriction and denial of application for disability benefits); Mor v. Kijakazi, Civ. No. 21-1730, 2022 WL 73510, at *5 (D.N.J. Jan. 7, 2022) (same).

Here, Plaintiff does not identify any traceable injury linked to the allegedly unconstitutional removal clause. Rather, she argues that she has satisfied this nexus because the decision denying benefits was the decision of the unconstitutionally appointed Commissioner. Doc. 9 at 5-6; Doc. 11 at 9-10. Like Judge Heffley, I do not find that this is sufficient to establish her standing. "Instead of merely tracing her injury – the denial of disability benefits – to Commissioner Saul's ability to delegate power to ALJs and the Appeals Council in general, . . . [Plaintiff's] burden is higher: she must be able to trace that injury to the actual unconstitutional removal clause, which is the unlawful conduct in this matter." Wicker, 2022 WL 267896, at *10; compare Collins, 141 S. Ct. at 1779 ("[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to the 'allegedly unlawful conduct' of the defendant. . . . Because the relevant action in this case is the . . . amendment, and because the shareholders' concrete injury flows directly from that amendment, the traceability requirement is satisfied."), with Wicker, 2022 WL 267896, at *10 ("Commissioner Saul did not promulgate a new action affecting or injuring Wicker . . . . Commissioner Saul merely occupied the Commissioner role . . . . [T]he agency continued to function as it

19

had [before Seila Law], given that the removal clause was the only constitutional defect."). Plaintiff has failed to establish any nexus between the removal restriction and the denial of his application for benefits. Therefore, I reject Plaintiff's challenge to the ALJ's decision based on Seila Law.

## IV.   CONCLUSION

The decision of the ALJ is supported by substantial evidence. The ALJ properly considered the opinion evidence utilizing the new criteria and did not err in crafting the RFC assessment. In addition, Plaintiff is not entitled to remand based on her separation of powers claim regarding the appointment of the Commissioner.

An appropriate Order follows.